KIRKPATRICK et al. v. SAN ANGELO NAT. BANK et al.

(Court of Civil Appeals of Texas. Austin. April 3, 1912. Rehearing Denied May 8, 1912.)

1. VENUE (§ 32*)—PLEA OF PRIVILEGE—DEMURRER.

Where a plea of privilege to be sued in the county of the pleader's residence, instead of that of a codefendant's residence, did not allege that the codefendant was fraudulently joined for the purpose of conferring jurisdiction in the county of the codefendant's residence, the court's failure to submit the plea was equivalent to sustaining a general demurrer thereto.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 47–50; Dec. Dig. § 32.*]

2. PRINCIPAL AND AGENT (§ 188*)—ACTIONS—JOINDER.

One injured by the negligence of the agent of a third person may join the agent and his principal in one action to recover all resulting damages.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 711, 712; Dec. Dig. § 188.*]

3. BANKS AND BANKING (§ 102*) — NEGLIGENCE OF CORRESPONDENT BANK.

Where school bonds were delivered by a school city to the S. bank, which delivered them to the A. bank for examination by the Attorney General, the latter bank was the agent of the former; and either or both of the banks were liable for the negligent loss of a bond while in the possession of the A. bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 274–277, 347; Dec. Dig. § 102.*]

4. BAILMENT (§§ 29, 21*)—RIGHTS OF THIRD PERSONS.

One entitled to receive the subject-matter of a bailment from the bailee has a right of action against him for the conversion of the bailed property, though not a party to the bailment contract, and may maintain a suit against the bailee and bailor, jointly and severally, for the value of the property.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 122, 91–102; Dec. Dig. §§ 29, 21.*]

5. TROVER AND CONVERSION (§ 35*)—DAMAGES—BURDEN OF PROOF.

The ordinary measure of damages in an action for the conversion of a chose in action, such as a negotiable bond, is the amount prima facie due on the face of the bond; it being for defendant to prove that the bond is of less value than its face value.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 215, 216; Dec. Dig. § 35.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**6. BANKS AND BANKING (§ 227*) — NEGLIGENCE—DAMAGES—PROOF.**

The approval and registration by the Attorney General of bonds issued by a school city was equivalent to a finding of the solvency of the city, importing that the bonds were worth prima facie at least their face value, so that, in an action by the city against a bank assisting in floating bonds, for damages for the negligent loss of one of them, evidence of the value of the bond was unnecessary, in absence of a showing by defendant that it was not worth its face value.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 871–873; Dec. Dig. § 227.*]

**7. APPEAL AND ERROR (§ 999*)—FINDINGS—CONCLUSIVENESS.**

The appellate court cannot disturb the finding of the jury on a question of fact which was properly submitted to it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3924; Dec. Dig. § 999.*]

**8. BANKS AND BANKING (§ 229*) — NEGLIGENT LOSS OF BOND—DECREE—PROVISIONS FOR INDEMNITY.**

While ordinarily the proper manner of protecting one sued on a lost bond is to require plaintiff to indemnify defendant, where the agents of a city for floating school bonds sued a bank, to which the bonds were delivered for examination by the Attorney General, for the value of a bond, payable in 40 years, lost while in its possession, it was sufficient, on rendering judgment against the bank for the value of the lost bond, to render judgment against the city in favor of the bank for a similar amount, with stay of execution until maturity of the principal of the bond, and on the coupons attached thereto until four years after the maturity of any of them.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 875, 876; Dec. Dig. § 229.*]

Appeal from District Court, Tom Green County; J. W. Timmins, Judge.

Action by C. W. Hobbs and others against the San Angelo National Bank and the American National Bank and another, in which the San Angelo Bank filed a cross-action against the other bank. From a judgment for plaintiff against the banks and a judgment for the San Angelo National Bank against the American Bank, and in favor of that bank against the City of San Angelo and another defendant, a part of defendants appeal. Reformed and affirmed.

Hill, Lee & Hill, for appellants. L. L. Montgomery, for City of San Angelo. Blanks, Collins & Jackson, for Hobbs and Brewer.

RICE, J. The city of San Angelo, constituting an independent school district, having assumed charge of its public free schools, issued, on June 1, 1909, 32 municipal bonds, styled "City of San Angelo ward school building bonds No. 2"; said bonds being numbered 1 to 32, inclusive, each in the denomination of $1,000, dated June 1, 1909, maturing June 1, 1949, with option of redemption 20 years after date, payable to bearer at Seaboard National Bank, New York, or First National Bank, Chicago, or at the office of the State Treasurer, with 5 per cent. interest, payable semiannually on August 1st and February 1st, each year. To each of said bonds were attached 81 interest coupons, numbered 1 to 81, inclusive, coupon No. 1 representing the accrued interest from June 1, 1909, to August 1, 1909, and coupons Nos. 2 to 80, inclusive, being for $25 each, and coupon No. 81 for $16.67, all payable to bearer. The city of San Angelo, by ordinance duly passed after the issuance thereof, authorized C. W. Hobbs and C. C. Brewer to take charge of said bonds, pending their investigation by the Attorney General, and upon their approval and registration to negotiate their sale and receive the proceeds thereof for the use and benefit of the school fund of the San Angelo independent school district; and in accordance therewith said parties delivered said bonds to the San Angelo National Bank, which bank thereafter transmitted the same by express to the American National Bank at Austin, for the purposes aforesaid. One of said bonds, to wit, No. 32, having been lost or mislaid by the latter bank, subsequent to its approval by the Attorney General and registration by the Comptroller, this suit was brought by said Brewer and Hobbs, joined by the board of school trustees of San Angelo, against both of said banks for its value, to wit, the face thereof, plus its proportionate share of the premium for which said bonds had been sold, alleging the facts hereinbefore recited; it appearing that the other 31 bonds were forwarded by said American National Bank to the Hanover National Bank of New York, who delivered same to the purchaser.

The San Angelo National Bank answered by general demurrer, general denial, and by special answer, in which it alleged that if it had ever received the bonds, as stated by plaintiffs, that the same were received by it at the special instance and request of plaintiffs for their accommodation, and for shipment to its correspondent at Austin, to be delivered by it to the Attorney General for his approval and for registration by the Comptroller; that said bonds, after registration, were to be returned to the American National Bank, to be by it delivered to the purchasers to whom plaintiffs had contracted to sell same, and that, in accordance with instructions received by it from plaintiffs and for their accommodation, said defendant, on about June 2, 1909, sent the package of bonds by Wells Fargo & Co. Express to the American National Bank at Austin, to be delivered by it to the said state officers for approval and registration; that it fully carried out all instructions given it by plaintiffs; and that if any of the bonds were lost or destroyed it was through the fault or negligence of the defendant American National Bank, and prayed that it go hence without

day. And, by way of cross-action against the American National Bank, it set up almost identically the same cause of action that plaintiffs had alleged against both of said banks, praying that in the event plaintiffs should recover any judgment against it that it have judgment over against the American National Bank for a like amount.

At the first term of court, the American National Bank filed its plea of privilege, in due form, to be sued in Travis county, the county of its domicile; and, not waiving its plea of privilege, but subject thereto, it answered, urging numerous exceptions to plaintiffs' petition, as well as to the cross-action of its codefendant, the San Angelo National Bank, challenging the sufficiency of said pleadings in many respects, all of which were by the court overruled. It likewise pleaded, among other things, a general denial, and specially to the effect that the San Angelo National Bank had sent it a registered package, requesting that it deliver the same to the Attorney General, which it did, and at the request of said bank it called at the Comptroller's office, where only 31 of the bonds described in the petition were delivered to it, and were all the bonds received by it, after the same had been approved and registered; and, at the instance and request of the San Angelo National Bank, said 31 bonds were forwarded to the Hanover National Bank of New York; that this defendant performed all of its service in a careful and prudént manner; that it did not know that said bonds had been sold; that this defendant did not have said bond 32, did not know where the same was, was not asserting any right, title, or interest therein, and that said bond had been lost, but not by it; that no one was asserting any right thereto; and, in the event that it should be held liable, that it be subrogated to all the rights as a holder of said bond. The same defense was also asserted by it by cross-bill against the San Angelo National Bank. And, not waiving its plea of privilege, the American National Bank asked that the city of San Angelo be made a party to the suit, and prayed that, in the event that judgment went against it, it be subrogated to all the rights as holder of said bond.

The city of San Angelo answered, admitting the issuance of and delivery to plaintiffs of said series of bonds, for the purposes alleged in plaintiffs' petition, and alleging that if one of said bonds had been lost by said defendants, or either of them, and if said defendants, or either of them, should be held responsible to plaintiffs in the original action. for the value thereof, then, and in that event, it expressed its willingness to issue to such defendants, or either of them as may be held in damages for the value of such bond, a duplicate of said lost bond, conditioned as said bond, in all its terms and requirements, save and except such substitute bond should. show on its face that it is issued in lieu of said last bond, and that the due ·dates of the interest and principal shall be deferred until such a time as that the original principal and interest due on the lost bond shall have been barred by the statute of limitations, or, in the event that the court should conclude that such substitute bond would not afford proper protection for such defendant or defendants, then it agreed that judgment might be entered against it in accordance with the terms and conditions of said bond in favor of the losing defendant, but upon the condition that such judgment should contain safeguards, making all interest payments and principal to become due under such judgment at such time as that the interest and principal shall have been barred by the statute of limitations, and with the further safeguard that, if the lost bond shall be hereafter found and established as a valid obligation against it, said judgment should be void.

A jury trial resulted in a verdict and judgment in favor of the plaintiffs against both of said banks for the value of said bond, together with interest, and judgment over in favor of the San Angelo National Bank against the American National Bank for a like amount, and in favor of the American National Bank against the city of San Angelo, subrogating it to all the rights of a holder of said bond for the value thereof; and to enforce such subrogation it decreed that the American National Bank should have and recover from the city of San Angelo the sum of $1,000, together with interest thereon from the 1st day of June, 1909, to the 1st day of June, 1949, at the rate of 5 per cent. per annum, said interest being payable in 85 installments in accordance with coupons thereto attached, as hereinbefore indicated, provided that neither the principal nor said interest installments shall be payable, nor shall execution issue under said judgment for the enforcement thereof, until such lapse of time from the respective maturities of said interest installments and principal as that the statute of limitations then existing would bar the recovery from the city of San Angelo of said respective interest installments and principal, in an action against said city for the enforcement of said original bond; and provided further, that said judgment, in so far as it runs against the city of San Angelo, shall become vacated and held for naught in the event said original bond No. 32 should become a valid obligation against the city in the hands of any person other than said American National Bank; from which judgment this appeal is. prosecuted.

While numerous assignments have been urged and ably pressed upon our consideration, both in argument on the hearing and in the elaborate brief of counsel for appellants, still we are inclined to believe that only four

of them need be discussed by us; the others having had due consideration, and being regarded by us as without merit.

It is insisted on the part of appellant American National Bank that the court erred in failing to submit to the jury for their consideration its plea of privilege to be sued in Travis county. For the proper discussion of the point presented, we deem it necessary to set out the following allegations of plaintiffs' petition: Plaintiffs averred, in addition to what has heretofore been stated, that the defendants, the San Angelo National Bank and the American National Bank, were banking corporations, chartered under the laws of the general government; the domicile of the San Angelo National Bank being at San Angelo, Tom Green county, and that of the American National Bank being at Austin, Travis county. They then alleged that on or about June 1, 1909, they delivered to the defendant the San Angelo National Bank, for transmission and delivery to the purchasers thereof, the 32 bonds heretofore described, which they alleged were the property of the board of trustees of the public free schools of the city of San Angelo, and were in the custody and charge of plaintiffs C. C. Brewer and C. W. Hobbs in said relation indicated in the ordinance first above mentioned, and that the defendant the San Angelo National Bank undertook and agreed to deliver said bonds to the purchaser thereof, and collect and deliver to the plaintiffs C. C. Brewer and C. W. Hobbs, city committeemen, aforesaid, and members of the then existing board of trustees, and each of them, the proceeds of the sale thereof; that the defendant the San Angelo National Bank, in pursuance of said agreement and undertaking, employed their codefendant, the American National Bank to have said bonds approved by the Attorney General of the state of Texas and registered by the Comptroller of the state of Texas, and then to deliver the same to the Hanover National Bank of New York City for final delivery to the purchasers thereof, etc., and that the defendant the American National Bank undertook to do all said things in pursuance of an understanding and agreement then existing between it and the San Angelo National Bank; that, in consideration of the mutual interchange of business between said defendants, and in consideration of the account kept by the San Angelo National Bank with the American National Bank, that the American National Bank did have said 32 bonds approved and registered as the law required; that said defendants did deliver 31 of said bonds, being bonds 1 to 31, inclusive, to said Hanover National Bank, who delivered same to the purchaser, but that defendants failed and refused to deliver said bond 32 to said bank or the purchaser, and collect therefor, or return same to plaintiffs, with interest coupons attached; wherefore they were damaged, etc.

[1] The plea of privilege in this case was in substantial compliance with the acts of 1907 (page 248), amending the law on this subject; but it failed to allege that said American National Bank was fraudulently joined with the San Angelo National Bank for the purpose of conferring jurisdiction against it in Tom Green county, so that the failure of the court to submit this plea of privilege was equivalent to sustaining a general demurrer thereto. See Pearce v. Wallis Landes & Co., 124 S. W. 496, where it is held that, upon failure to make such allegation, no proof supporting such a contention could be introduced. In the case at bar, however, even if such allegation had been made, there is no proof in the record having any tendency whatever to support the same; but, on the contrary, we think the evidence sustains the material allegations of plaintiffs' petition in all respects. Our statute provides that, where there are two or more defendants residing in different counties, suit may be brought in any county where any one of the defendants resides. See article 1194, R. S., subd. 4. The petition in this case, we think, sets up a good cause of action against both defendants.

[2] The plaintiffs had the right to bring their suit against either or both of said banks for the loss of said bond. It has frequently been held that, where a person is damaged or injured by reason of the default, want of care, or negligence of the agent of a third person, he may join the agent and his principal in one action to recover the damages occasioned by such negligence or want of care. See Mathonican v. Scott, 87 Tex. 396, 28 S. W. 1063; Gardner v. Planters' Bank, 54 Tex. Civ. App. 572, 118 S. W. 1146; Parlin & O. Co. v. Miller, 25 Tex. Civ. App. 190, 60 S. W. 881; Ash v. Beck, 68 S. W. 53; Turner v. Brooks, 2 Tex. Civ. App. 451, 21 S. W. 404; Cobb v. Barber, 92 Tex. 309, 47 S. W. 963; Dublin Oil Co. v. Robinson, 50 S. W. 1054; Lyons v. Daugherty, 26 S. W. 146; Bergstrom v. Bruns, 24 S. W. 1098; Cardwell v. Masterson, 27 Tex. Civ. App. 591, 66 S. W. 1124; Ney v. Ladd, 68 S. W. 1014; Hoskins v. Bank, 48 Tex. Civ. App. 246, 107 S. W. 598; Tew v. Wolfsohn, 174 N. Y. 272, 66 N. E. 934; McLean v. Sexton, 44 App. Div. 520, 60 N. Y. Supp. 871; Nixon v. Malone, 95 S. W. 577; Malone v. N. Y. Life Ins. Co., 100 Tex. 250, 98 S. W. 380, 99 S. W. 403; State Nat. Bank v. Thomas, 17 Tex. Civ. App. 214, 42 S. W. 1016.

[3] In the present case, the American National Bank was the agent of the San Angelo National Bank, and the latter was responsible to the plaintiffs for its default or negligence. In State Nat. Bank v. Thomas, supra, Justice Stephens, in discussing the point involved, says: "The main question in this case is whether a bank receiving paper for collection is responsible for all subsequent agents employed in the collection of

the paper. If the precise question has ever been decided in Texas, we are not aware of it. We therefore assume that the question is an open one in this state. The authorities elsewhere are quite conflicting. In the Supreme Court of the United States, too, the decisions appeared a long time to be in conflict; but in the case of Exchange Nat. Bank v. Third Nat. Bank [112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722], the question came squarely before that court; and in an able opinion by Judge Blatchford, reviewing previous decisions, the New York rule, which was also the English rule, was finally adopted. The decision of the case at bar was made in conformity with the rule so adopted, and we approve it."

[4] The authorities seem also to sustain the proposition urged by appellee that a person entitled to receive the subject-matter of a bailment from the bailee has a right of action against him, although he is not a party to the contract of bailment; and, where such bailee has converted the property held by him as such, the actual owner thereof is entitled to maintain a suit against him and his bailor, jointly and severally, for the value of the property so converted. See Clay v. Gage, 1 Tex. Civ. App. 185, 20 S. W. 949; Horseley v. Moss, 5 Tex. Civ. App. 341, 23 S. W. 1115; also Roberts v. Yarboro, 41 Tex. 453; McAnelly v. Chapman, 18 Tex. 198; Cyc. vol. 5, p. 214.

We think it clear that if both of said banks were jointly and severally responsible to plaintiffs for the loss of said bond, and the authorities seem to sustain this view, then plaintiffs had the right to sue said banks in either Travis or Tom Green county, at their option. This being true, in our judgment, it follows that the court did not err in failing to submit said plea of privilege to the jury.

[5] After the witness Hobbs had, on direct examination, testified as to the market value of said bond in Austin at the time of its loss, it appeared by his cross-examination that the same at said time had no market value there. Whereupon appellants moved to exclude said evidence, which motion was overruled. He was also allowed, over appellants' objection, to testify as to the market value of said bond in San Angelo, and to state that it had a similar market value in Austin. Bills being reserved in this respect to the action of the court in both instances, such rulings are now assigned as error. We differ from appellants in this contention, because we think that the plaintiffs had made a prima facie case as to the value of the bond in question without such evidence. In Ramsey v. Hurley, 72 Tex. 200, 12 S. W. 59, which was an action to recover the value of certain notes, it is said: "In actions to recover damages for the wrongful conversion of a chose in action, it is the purpose and policy of the law, as in other actions for damages, to give to the injured party compensation for the damages he has sustained. The ordinary measure of damages in such case is the amount prima facie due on the face of the claim. If the claim for the conversion of which the suit is brought, is really of less value than its face, it devolves upon the defendant to prove that fact. Field on Dam. § 823, note 33; Sedg. on Dam. p. 403 et seq., and note a."

In First Nat. Bank v. Henry, 159 Ala. 367, 49 South. 97, which was also a suit to recover for the value of a note, the court says: "The measure of damages which the holder is entitled to receive of the bank or other collecting agent, who has been guilty of negligence or default in respect to it, is the actual loss which has been suffered. The loss is prima facie the amount of the bill or note placed in its or his hands; but evidence is admissible to reduce it to a nominal sum"—citing Dan. on Negot. Instr. § 239; McPeters v. Phillips, 46 Ala. 496.

[6] We understand this rule as extending to and embracing within it all negotiable securities, such as bonds, etc. The evidence offered by plaintiffs in the case at bar made a prima facie case as to the value of the bond. It devolved, as we think, upon the defendants to show, if they could, that it was of less value than its face represented it to be. But, apart from this, we are inclined to believe that, since it was shown that this bond, as well as the others, had been approved by the Attorney General and registered by the Comptroller at the time of its loss, it became unnecessary for plaintiff to make further proof of its value, because such approval and registration not only evidenced the fact that all formalities had been complied with in respect to their issuance, but was equivalent to a finding in favor of the solvency of the municipality of San Angelo, which had issued it, whereby it imported that it was worth, prima facie at least, its face value. In addition to this, it clearly appeared that the series of bonds had, prior to its loss, been sold in the market for a premium of $2,000; and certainly, if it were admitted, for argument's sake, that a technical error had been committed in the rulings complained of, yet, under the facts and circumstances in evidence, it would seem that it was entirely harmless.

[7] The next question presented for consideration is whether or not the evidence is sufficient to warrant the judgment against the American National Bank for the value of the lost bond. We have given most careful attention to the insistence of counsel for appellant, to the effect that the evidence is insufficient in this respect. We conclude, however, that, as this was a matter for the consideration of the jury, whose sole province it was to determine this question, we are not authorized to disturb their finding.

[8] By its eighteenth assignment, the American National Bank urges that the court erred in not entering a final judgment in this case, and making a final adjudication of the

rights of this defendant against the city of San Angelo as to the principal and interest of said bond, and fixing a time when this defendant would be entitled to its execution or executions against the city for said interest and principal. Answering this contention, appellee says by its proposition that, under the pleadings and proof as developed in this case, there was no question of fact arising in connection with appellant's cross-action against the city of San Angelo, and that there was therefore no error in the court's action, directing a proper verdict and entering a final judgment determining the rights and remedies of the parties to such cross-action, for the reason that under such action of the court the appellant was afforded the only relief authorized by the pleadings and proof, either at law or in equity. We are inclined to agree with this contention, and hold that the verdict and judgment in this case, as between the appellant American National Bank and the city of San Angelo, is substantially correct. There was no issue between said appellant and the city; the latter consenting that the court should enter judgment in favor of appellant, if plaintiffs recovered against it, provided that its rights were properly safeguarded. The lost bond, which was the subject of, suit, was a negotiable instrument; and, since it might become a valid obligation against the city in the hands of an innocent purchaser for value, it was the duty of the court to direct such verdict and render such judgment as would protect the city from a double payment; and this is ordinarily done by requiring the plaintiff suing on the lost instrument to execute a bond indemnifying the defendant against loss, should the same come into the hands of an innocent holder. See Wiedenfeld v. Gallagher, 24 S. W. 333; Allerkamp v. Gallagher, 32 S. W. 248; Texas Banking Co. v. Turnley, 61 Tex. 365; Cyc. vol. 25, p. 1614. But this is not absolutely essential, since the court may otherwise protect the rights of the defendant; and, as no such bond was tendered in the instant case on the part of appellant, the court, in our judgment, did what was equitable by ordering that execution be stayed until the law of limitation had barred the right of recovery on said bond and coupons. See 25 Cyc. pp. 1614 et seq., wherein, among other things, it is said that "a court of law may not order the filing of an indemnity bond, but may stay proceedings or execution until it is filed, or until it appears that it is no longer necessary for the security of the defendant; or the court may continue proceedings until the claim is barred by the statute of limitations." But, since the judgment in this case fails to definitely state the period of time in which such limitation will expire, but leaves the matter open to be determined by the clerk of the court, we deem it best to reform the judgment in this respect, so that no execution shall issue thereon in favor of the American National Bank against the city of San Angelo on said coupons, or any of them, until four years after the maturity thereof; but we are inclined to believe, in view of the long period of time that the principal has to run, that said bank should be entitled to execution for the amount of the principal of said bond upon maturity of the same; and, as thus reformed, the judgment of the court below is, in all things, affirmed.

Reformed and affirmed.