## TILLMAN COUNTY BANK OF GRANFIELD, OKL., v. BEHRINGER.
### (No. 1963.)

(Court of Civil Appeals of Texas. Amarillo. May 3, 1922. Rehearing Denied June 14, 1922.)

1. **Banks and banking** ⊜═171(6)—**Correspondent bank to which check is sent for collection is agent of forwarding bank.**

The correspondent bank to which commercial paper is sent for collection by a bank receiving it from the owner is, in the absence of some agreement, express or implied from general usage which would become a part of the contract, the agent of the forwarding bank, and not of the owner of the paper, so that the forwarding bank is liable to the owner for the negligence of the correspondent.

2. **Courts** ⊜═97(1)—**Decision of United States Supreme Court on questions of commercial law should be followed.**

It is desirable that the decisions of the state courts should conform to those of the United States Supreme Court in questions of commercial law, so as to avoid the application of a different rule of law to the same state of facts in the same jurisdiction, depending only upon the court in which the case might fall, and the Court of Civil Appeals will follow such decision on a question that is fairly debatable, where there is no controlling decision of the state Supreme Court to the contrary.

3. **Banks and banking** ⊜═171(3)—**Evidence held to sustain finding of negligence in sending check directly to drawee bank.**

Evidence that the correspondent of defendant bank to which defendant had sent plaintiff's cashier's check, issued by another bank, for collection, had sent the check to the drawee bank directly with request to remit, though there was another bank in the same town to which it might have been sent and the correspondent bank had previously had trouble getting remittances from the drawee bank, with proof that it was a general custom of banks to send such paper for collection to a bank other than the drawee bank, held to sustain a finding that the correspondent bank was negligent.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by Dell Behringer against the Tillman County Bank of Granfield, Okl. Judgment for plaintiff, and defendant appeals. Affirmed.

Davenport, Wilson & Thornton, of Wichita Falls, and Wilson & Roe, of Frederick, Okl., for appellant.

Fischer & Fischer, of Wichita Falls, for appellee.

BOYCE, J. Dell Behringer brought this suit against the Tillman County Bank of Granfield, Okl., to recover damages alleged to have resulted from the negligence of the bank in the matter of the collection of a cashier's check, issued by the Thrift-Waggoner Bank of Thrift, Tex., for the sum of $3,150, payable to Dell Behringer, and deposited by him with the defendant bank for collection. The case was tried before the court, and judgment rendered for plaintiff.

On June 1, 1920, Dell Behringer delivered to the Tillman County Bank a cashier's check issued by the Thrift-Waggoner Bank, of Thrift, Wichita county, Tex., in his favor for the sum of $3,150. The Tillman County Bank credited Behringer with the amount of the check, and he drew $400 out of the account. The Tillman County Bank immediately sent the check as a cash item to its correspondent, the City National Bank of Commerce of Wichita Falls, Tex. This was its customary way of collecting items drawn on banks in the vicinity of Wichita Falls, Tex. Nothing was said by Behringer to the Tillman County Bank in regard to the manner or method of collecting this check, and no instructions were given in reference there-

---

⊜═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to. The Wichita Falls bank promptly notified the Tillman County Bank of the receipt of the check and credit of same to its account. The Thrift-Waggoner Bank was located at Thrift, Tex., a small town off the railroad about 20 miles from Wichita Falls. There was another bank, Johnson Bros. Bank, located at this place. On June 3d, promptly after receipt of the check, the Wichita Falls bank sent it by mail as a cash item to the Thrift-Waggoner Bank, with instructions to remit in payment. The bank cashier testified that this was its customary way of handling such items. Receiving no report from the Thrift-Waggoner Bank, the Wichita Falls bank sent out successive inquiries about June 8th and June 11th, but received no response. It had been having trouble for some time before this transaction in securing remittances from the Thrift-Waggoner Bank on items sent it. At one time it had been clearing such items through the First National Bank at Burkburnett, but such bank refused to handle such collections further because of the trouble in securing returns from the Thrift-Waggoner Bank. On June 16th the Wichita Falls Bank sent an agent to Thrift, and collected some $3,000 "to apply on some of its items," but the plaintiff's check was not included in the amount thus collected. If the check had been presented and payment demanded "over the counter" at any time prior to the evening of June 16th, it would have been paid. The Thrift-Waggoner Bank failed on June 16th, without ever having remitted in payment of plaintiff's check, which it had received and retained. The Wichita Falls bank thereupon charged the amount of the check back to its account with the Tillman County Bank, and notified such bank of the facts. This was the first notice the Tillman County Bank had that the check had not been paid. This bank in turn charged the plaintiff's account with the amount of the check, and demanded payment of the $400 required to cover the deficiency.

It is conceded that there are only two questions for decision on this appeal: First, whether the Wichita Falls bank was the agent of the Tillman County Bank, or of the plaintiff; second, whether the facts support a finding that the Wichita Falls Bank was negligent in the matter of the collection of the check. The trial court found against the defendant bank on both issues, and such findings are assigned as error on this appeal.

[1] It is an open question with the Supreme Court of this state as to whether a correspondent bank, to which commercial paper is sent for collection by a bank receiving the same from the owner becomes, in the absence of some agreement, express or to be implied from general usage which would become a part of the contract, the agent of the forwarding bank, or of the owner of the paper. First National Bank of Shreveport v. City National Bank, 106 Tex. 297, 166 S. W. 691, L. R. A. 1918E, 336; Waggoner Bank & Trust Co. v. Gamer Co. (Tex. Sup.) 213 S. W. 927, 6 A. L. R. 613. There was no special agreement in this case. No general custom known to both parties was proven, so that the question suggested is squarely up for decision. Both sides of it have been ably presented by counsel in this case, and an imposing array of authorities cited in support of their respective positions. So much has been said on the question by text-writers and by the various courts that we do not consider it necessary to discuss the matter at any length. A collection of a great many of the authorities will be found in the notes to any of the following text-book references: Morse on Banks & Banking, §§ 268–287; Daniel on Negotiable Instruments, §§ 341, 342; Michie on Banks & Banking, § 170; 7 C. J. pp. 606, 607; 3 R. C. L. p. 622. The Supreme Court of the United States holds that the correspondent bank is, under the circumstances stated, the agent of the forwarding bank, and that the forwarding bank is liable for the negligence of such correspondent bank. Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722. At least four of the Courts of Civil Appeals of this state have announced their adherence to the rule adopted by the United States court. State National Bank of Ft. Worth v. Thomas, 17 Tex. Civ. App. 214, 42 S. W. 1016 (Fort Worth); Schumacher v. Trent, 18 Tex. Civ. App. 17, 44 S. W. 460 (Galveston); First National Bank v. Quinby, 62 Tex. Civ. App. 413, 131 S. W. 429 (Dallas); Kirkpatrick v. San Angelo National Bank (Tex. Civ. App.) 148 S. W. 362 (Austin).

[2] It is very desirable that the decisions of the state courts should conform to those of the Supreme Court of the United States in questions of commercial law, as otherwise we would have the federal courts and the state courts in the same jurisdiction apply a different rule of law to the same state of facts, as the case might fall in the one court or the other. State National Bank of Ft. Worth v. Thomas Mfg. Co., supra; Lone Star Trucking Co. v. City Bank of Commerce (Tex. Civ. App.) 240 S. W. 1009, recently decided by this court. The question is fairly debatable, as the most eminent authorities may be found on either side of it, and, whatever might be our opinion as an original proposition on the matter, we feel bound, in the absence of a decision by our own Supreme Court, to follow the rule announced by the United States court and followed by the other Courts of Civil Appeals of this state.

[3] We think the finding of the trial court that the Wichita Falls bank was guilty of negligence in the matter of the collection of the check is sufficiently sustained by the evidence. The facts are distinguishable from those in the cases of First National Bank of Shreveport v. City National Bank (Tex.

Sup.) 166 S. W. 689, and Waggoner Bank & Trust Co. v. Gamer Co. (Tex. Sup.) 213 S. W. 927, decided by the Supreme Court. In the first case referred to the drawee bank was the only bank located at the place where the check was payable.

"The express company there, apparently the only other public agency for making a collection, would not handle protest paper at all. The established custom, under this somewhat extreme condition, was to send the checks to the drawee bank if it was in good standing, and the instructions to protest were generally observed by such banks. Appellant was aware of this general custom, and did not expect this business to be handled differently."

And it was held that under such circumstances there was no negligence in sending the check direct to the drawee bank. In the other case cited the drawee bank was the only bank at the place of payment, and there were no other facilities there for the collection of checks drawn on it, and the forwarding bank "had no reason to apprehend" that the drawee bank, which was in good standing, would not remit in accordance with instructions. It had been the custom also in that case of the forwarding banks to make collections by sending such items direct to the drawee bank. The trial court found that the forwarding bank was not guilty of negligence, and the Supreme Court approved such holding. In this case, while the officers of the Wichita Falls bank testified that this was their custom in collecting items drawn on the Thrift-Waggoner Bank, the only evidence as to a general custom among banks as applicable to the facts of this case is to the effect that the custom was when there was more than one bank in the same place to send the item to another bank rather than to the drawee bank. The Wichita Falls bank and other banks had been having trouble in securing remittances, and the conclusion is reasonable that it had reason to apprehend that remittance to cover this item might not be promptly made. The failure of the Wichita Falls bank, after the unexplained delay had occurred, to take more vigorous action, might also be imputed to it as negligence. We hold, therefore, that this finding of the trial court is sustained by the evidence.

The judgment will be affirmed.